Futureceuticals v. Stiefel. Mr. Wechsler. May it please the Court. Good morning, Your Honors. Colin Wechsler for Appellant VDF Futureceuticals. I'll just refer to our Your Honors, this case before this Court is about a transaction by which the defendants in this case did two things that were expressly prohibited. I don't understand why Judge Dara is permitting this interlocutory appeal. Aren't all the issues remaining in the District Court, aren't they all entwined with this? I mean, are you seeking additional damages in the District Court? We would be seeking additional damages. There are issues... Based on what, for example? Based on the acts of Stiefel, for example. After the assignment, they did things to harm the financial interests of J&J. Well, is that any different from reducing the royalties? It is different, Your Honor. There was, for example, very specifically, they had terminated the license agreement, which they claimed they were permitted to do just by... Well, doesn't that affect the royalties? No, there's a specific clause in the agreement that says they have to pay a million dollars in order to terminate for convenience. It's not based on royalties. It's not based on any of the facts that would go to the value of the royalties. It's solely a provision in the contract and Futureceuticals... So you're looking for another million dollars based on that claim? And in terms of they're not pursuing their best efforts, we're also seeking the damage to the overall contract going forward. The going forward issues... Well, pause on best efforts for a moment. Isn't that what you're really arguing with regard to the royalties? That J&J and Stiefel and Lewis and so on, they didn't use their best efforts to commercialize these, whatever they're called, these cosmeceuticals. We do argue that he did not use his best efforts, but that's not the specific issue. But I don't understand. Why isn't that the same thing as the... It's actually, I think, a much more clear-cut approach to your case than assignment. I mean, there wasn't an assignment. And you have to say it's like an assignment or de facto assignment. But you have the best efforts clause, which seems much more direct. So wouldn't it be better to have that and be considered by the district judge in conjunction with your somewhat far-out assignment argument? Your Honor, I don't think that the district... What's the value of having piecemeal appeals in this case? What the court found in terms of the immediate appealability of this issue was that there were at least some separate facts, which there are. I don't understand. If you lose here, you go back and argue for the same damages under best efforts. So why not have that determined at one time? What's the advantage to the judiciary of having these piecemeal appeals? What Judge Dara found was that the advantage would be not proceeding through a trial that would have overlapping issues and overlapping facts, not the same but overlapping. And then if this appeal was taken... Look, if you have overlapping facts, why don't you want to have one trial in which all the facts can be presented together? If they overlap and you have multiple trials, extremely confusing. You're going to have juries find different results for the same set of facts? That is the overlap? That's exactly what we argued and what the judge found. Let me put Judge Posner's question in a different way. It now sounds like you are assuming, and perhaps the district judge did as well, that each element of damages attributable to a particular conduct is a separate claim for purposes of Rule 54. Is that your assumption? It isn't true as a general rule that simply because there are... Indeed, it is false as a general rule that the remedy is the same as the claim. It looks to me like there may just be one claim here and distinct elements of damages. And if that's right, then you're within the scope of the rule of liberty mutual against Wetzel, which says that until all elements of damages have been pinned down, a Rule 54b appeal is not possible. Do you have any analysis of the effect of Wetzel on this case? I don't think Wetzel in any way takes away the fact that Judge Dara, and I don't think it was an abuse of discretion, determined that there were separate claims as well as separate damages. Wetzel dealt with a Rule 54b certification too. The fact that the district court is certified doesn't mean he's entitled to it. Wetzel says that Rule 34 cannot be used until damages have been quantified. You can't use it to bring up a legal theory of recovery independent from a remedy. That's the holding of Wetzel. And it sounds from what you're saying now that what Judge Dara did and what you want is to bring up one legal theory of recovery divorced from the question, what is the final remedy? And Wetzel says that's not permissible. That's not what we're doing. There are different legal claims and legal theories. There's a breach of fiduciary duty claim. That's an entirely different claim, and it comes at very different damages that are issued here. So I don't believe that the court found that there was only one legal claim and that there were different ways of measuring the damages. It's not accurate. The court made a decision that there were at least and this is straight from the Olympia Hotel's decision from this court, that there are at least some separate facts, which there are. There are different discrete legal claims that are resolved, and I certainly read Olympia Hotel's saying it's within the discretion of the district court and not to be formalistic. I do not see what is the advantage of having a sequence of trials dealing with overlapping issues. Well, you said that before, and I was trying to answer that, and the situation that if the court had not certified this for immediate appeal, that's the scenario that would have caused potentially multiple trials on the same issue. By doing this now, we get to have... Multiple trials on the same issue? I mean, ordinarily, if you have a complaint with a bunch of different claims, they're all tried in one case. After this appeal is decided, and as we get to the merits of the claim, if the judge, this court, rules in our favor, that's exactly what we have. If we wait until after the trial, you know, in that course of operation, then we will have conducted a trial on a variety of overlapping issues. If we appeal at that time, the decision is reversed. We'll have to come back and conduct a second trial on the same issues, and that is the risk of having inconsistent decisions. That's actually a risk, a premature effort to get summary judgment on fewer than all legal theories. Well, it might be their risk. It will be our harm. That's why we sought to do this. We will be the ones who will be suffering from their decision, and the court ruled that that is not the best way to proceed, that in his view, that it would be more efficient to have the decision first. I would say that what this illustrates is the district judge made a mistake in trying to carve up separate legal theories, and then made a second mistake by issuing a Rule 54 order. Well, Your Honor, there is a big difference between the court's two decisions. One of them is subject to substantial discretion, and the other one isn't. Not under Liberty Mutual. If there are damages issues that remain open between these parties, there is no discretion in the district court, not at all. The damages that are at stake here are really very defined. They're very clearly defined in all of the pleadings. They're very specific about what damages apply to which claims. So I think that the judge was within his discretion to permit this immediate appeal. But in addition, I also think that it's not correct that we're somehow out on a limb when we're arguing that the interpretation of the Baxter-Ninos case clearly say that it's not true, that in every instance a purported change of control will not be deemed an assignment of assets. I think what the defendants thought they could do is somehow package this transaction, attach a certain label to that transaction, and they could do things that were expressly barred by the license agreement. And the district court absolutely got it right on the legal standard. See, what's really bad about your strategy is you appeal on a very weak ground the anti-assignment clause when there's been no assignment. Whereas if you were arguing best efforts or breach of fiduciary duty or something like that, you might get the damages you're seeking on a much solider ground. Your Honor, we haven't lost those claims. The claims that the judge ruled were... I know. This is cutting off the rat's tail in little pieces. If you lose now, you go back, you have a second alternative. Then you're going to come back with that, if Judge Darrow allows it. Then you go back and have a third alternative, always seeking the same damages, then seeking different damages on different claims. I mean, the logic of your position is that if you have, say, six claims, you get six appeals. No, what we're saying is exactly... What do you mean, no? What do you... Excuse me? Suppose you lose, and then you go back and you argue best efforts, and you lose that. Then you come back with another appeal? Yes, but it will be a variance. Yes, so that's how we get to six appeals, or however many claims you have. Whenever a court issues a partial decision, you... That is ridiculous. This is one case. We don't want to hear six... I do not. I shouldn't speak for my colleague. I do not want to hear six appeals in the same case. The decisions on these appeals are entirely different. We don't hear, just like what the Third Circuit held, where stock control... There's nothing unusual about multiple claims, but we don't hear multiple appeals. That's extremely rare. It's been years since I've seen an Olympia-type, you know... We get a lot of interlocutory appeals having to do with class certifications. We don't see cases like this. Rule 54 expressly provides for this exact scenario. It provides for what the standard is... But you understand, don't you, that you're making a ridiculous argument? Because you've got your six claims, or however many you have, and you're going to fight to the last with your six appeals, if necessary. I disagree, because the reason I disagree with you is because the issues that were decided, the discrete issues that were decided by the court in this decision... Look, that's often the case. If there are multiple claims, called discrete, they're separate. Six separate claims. But we don't usually see six separate appeals, just because the complaint contains six separate claims. Now, what's special about this case? You don't want to see six separate appeals. I understand that. The trial court doesn't want to have two trials over the same issues. That's the interest that they get to pursue in determining whether or not immediate appeal will favor administration. We don't have multiple trials. We would have multiple trials. No, because you have... You don't have multiple trials just because you have multiple claims. Can I explain to you how we would have multiple trials if this appeal wasn't granted now? Sure. If this appeal isn't granted now, we take this case to trial on the issues that you described that are remaining in the case. If we were... Regardless of what happens, perhaps, at that trial, we will take an appeal of the decision before dismissing these claims that we were not allowed to present. If we prevail at that time, the case gets brought back to the district court, and now the district court has to conduct a second trial on potentially overlapping issues. Ultimately, the burden on the judicial system that the trial court is focused on and that Rule 54 is specifically tailored to is the additional burden of administration of justice in the trial court, not the six appeals that you think you might hear. So I don't think that whether or not there will be multiple appeals is the obstacle. That's the entire purpose of Rule 54 certification, that you're going to be comfortable with the fact that you're going to appeal something now and then you may appeal something later, just endemic to the system. So I don't think your reasoning would mean we won't have Rule 54 at all, but that's not what the rule is. And I don't think the judge abused his discretion in reaching that decision. That's what the court would have to find in order to reject that decision. So in terms of what the merits of the appeal, which I think are there about whether or not there were facts submitted that if believed by a trier of fact could reach the pivotal issue that the district court did correctly identify. But you have a change of ownership rather than an assignment. Excuse me, can you say that again? You have here a change of ownership rather than an assignment. You have a document on which the defendants typed the words membership interest purchase agreement, but just because they used those words doesn't make it so. Form doesn't trump substance. In the cases that we identified, the Third Circuit for one, the marker card. Actually, your argument sounds like the old sale of business doctrine and securities law in which courts would reclassify sales of securities as sales of assets or the reverse in order to make securities come and go. And the Supreme Court in Landreth-Timbers said you can't do that. The transaction is the form. If you sell the securities, it's a sale of securities and not of assets. If you sell the assets, it's a sale of assets and not of securities. Your whole argument seems to suppose the opposite of the Supreme Court's holding in Landreth-Timbers. Is there any reason to believe that Illinois disagrees with Landreth-Timbers? There is. Just as the Baxter and Ineos court said, the key issue is whether or not the company that comes out of that transaction, the acquired company, has an actual independent existence. If the rule is as you say, which is that if they have a document that says – Is there some place I can go and look to see an Illinois decision saying, for purposes of our law, we're not going to apply the Landreth-Timbers doctrine? There are two separate issues. The issue is to find – My question can be answered yes or no. If you answer it no, you can then explain. But I wish you would answer my question. The answer is there is Illinois authority on that. There is the Marha Carver Bard case, which is expressly identifying the exact same issue that we have in which the district court found on the facts that are present here that have been submitted to the district court that actually summary judgment was appropriate in favor of the plaintiff, that that transaction was an attempt to use a form of sale that did not reflect the reality. It was just a pass-through company. That's exactly the same facts that we submitted here. The Baxter and Ineos case both say that the rule that a change of control does not operate as a transfer of assets is the general rule. It only applies when all you have is a mere change of control. This is not a case where we had a mere change of control. In fact, what happened was the company completely shuttered its doors and seized entire operation. I did want to also talk about a second issue that is, regardless of how you come out on the assignment, you still have to reach, which is the question of the advanced royalty. And it's completely independent of the first issue, and it's based on the contractual definition that all the parties agreed to as to what would be an advanced royalty. It's defined very simply and clearly as monies that are based on and credited against future royalties. We submitted evidence in terms of Stiefel's business records, in terms of an admission of the defendant, Lewis, that are very clear that this entire transaction's purpose was to reduce the future royalties. You look at those documents. There is a graphic in there. Well, that's the best efforts issue. I don't understand why this isn't here on best efforts rather than on assignment. That's not a best efforts issue, because that issue is completely separate and apart from the best efforts, which is that if J&J foregoes collection of royalties in the future and receives money for that, that counts as an advanced royalty, regardless of what happens in the future. You could, in the future, have tremendous efforts, do a terrific job. If you collected money that was based on and credited against future royalties, that is an advanced royalty. The defendants, in this case, are arguing that you shouldn't consider any facts on that basis because it's simply a matter of contract interpretation, and we agree that the contract is clear, but the facts are absolutely pertinent in determining what happened. What happened is that J&J recovered a lot of dollars that were absolutely credited against future royalties, and it didn't want to share it with future suitables. That's not what the contract permits. The contract says if it's based on and credited against future royalties, you've got to pay it, and there are obvious reasons why you would do that. We had a contract that aligned these interests perfectly. J&J collects money, $0.33 of every dollar has to go to future suitables. What they did is structure a transaction where monies were absolutely paid and then credited against. These documents show that in the future, all royalties were terminated to J&J, that if you do that, you have to share the money. Interests are aligned. You collect money, you must share it. They tried to go around that, and that's not successful. Except this money was paid to Lewis and his co-owners, not to the company. I think that is correct, although I would note that in the definition, there is no reason to say that those monies have to be paid directly to J&J. Well, sure there is. It says monies paid to the licensee. That's the definition of royalty, not the definition of advanced royalty. The definition of advanced royalties are monies based on and credited against future royalties. Royalty includes advanced royalties, so the definitions are interlocking. I don't think they can be read without reference to one another. I would also note that the wrongful prevention doctrine would stop Joe Lewis from doing what we all know happened. J&J collected money, distributed it to its owners. He stepped in front and intercepted that payment. That doesn't mean that because that part of the definition, if you view that it's there, did not happen. That's, I think, a straightforward application of the wrongful prevention doctrine. I had wanted to save some time for rebuttal, and I hope I'll be given the opportunity to have some minutes for that. Yeah, sure. Okay, thank you, Mr. Ware. Thank you. Mr. Cardozo? Thank you, Your Honor. May it please the Court. Ray Cardozo for the appellees J&J and Stiefel, and Courtney Paulk will argue for five minutes for appellee Lewis. Starting, of course, with jurisdiction, Judge Posner, our clients objected to this Rule 54B certification for many of the concerns this Court has articulated. We reluctantly chose not to argue that it was an abuse of discretion based upon the understanding that the claim would simply be limited to... What do you think is the effect of Wetzel? I think there's two possibilities. One, the Court could hear this appeal provided that the issue is limited. Look, I asked a particular question about Wetzel. I wasn't asking about our discretion or about anything else. What do you think is the effect of Wetzel? The effect of Wetzel is to limit the claim before the Court to solely the question of whether the transaction on its face violates, because that's a separate claim and the damages there are completely different. It's only the purchase price that's at issue from all the best efforts and everything. You think it is a separate... This particular theory of liability is a separate claim for relief. Why is that? If there's no de facto assignment, if there's no blurring of commercial or best efforts, because then the damages that are issued are just the purchase price and not based upon what happens later. You seem to be defining a claim by what damages it leads to, and that's not a normal definition of claim. One claim can lead to different kinds of damages. We don't use damages to define the claim. Right, but also based upon entirely separate transactions and events. In this case, the claim is based upon... The claim is based upon was this purchase transaction an assignment? The best efforts is what did we do after the purchase transaction? Did that comply with best efforts? If you define it at that, you theoretically could fit it within Wetzel. You also could just say that that decision doesn't allow this at all and it's Rule 54. That was the position we effectively took in the trial court. We reluctantly conceded it here. We have no objection to this court simply going with a position we urged the district court in the first instance. It doesn't make sense because you would inevitably end up where we are today in which all parts of the cases are being argued interchangeably to you. If you hear this appeal at all, the only way under Wetzel that you can permissibly do so is if you simply look at the purchase transaction itself and ask yourself the question, was it an assignment? Ask yourself the question, was it an assignment? Judge Poster, we've already answered that. It clearly wasn't. It was simply a change in control. Then you also ask the question, did that transaction trigger an obligation to pay over a portion of the purchase price under the advanced royalty clause? And after correcting the statement by counsel, Judge Sykes, the provision in the definition of advanced royalties unambiguously provides it must be paid to the licensee. Not only does that text appear in the royalties clause, but the very last second, record document 72-1, which is section 2.2A of the membership interest, of the license agreement, the term advanced royalty shall mean any monies based on and to be credited against sub-licensees defaults future obligations to pay royalties on the actual sales of products paid by sub-licensee to licensee. So absolutely the requirement that it must be paid to J&J is repeated multiple times in this clause, including in the very definition of advanced royalty itself. So absolutely, that claim is dead on arrival because textually that's a requirement, undisputed fact, not met. But isn't there concern that a third of those royalties weren't given back to FC? Well, there's two separate requirements for the advanced royalty provisions triggered. One is that it be paid to J&J. They don't have any answer to that. That's the end of the issue. The second requirement that they've devoted all of their energy arguing to, which don't even reach because of this first problem, is whether the payment was to be a credit on the future royalty obligations of Stifel. And they don't have a leg to stand on on that point either because what happened is the MIPA transaction proposed an amendment that would change the royalty obligations. But they rejected it. The royalty obligation was never changed. The MIPA is in the record. You won't find one word in that document that grants Stifel a credit on the future royalty obligations based upon the payment. Well, the royalty obligations were changed after the transaction, but that isn't within the scope of this appeal. Exactly. That was my whole point on the Rule 54. If, as the district court certified it on the theory that you can limit the claim to the purchase transaction itself. We didn't agree with that at the time. Under the abuse of discretion standard we said, okay, if you do what the district court did and just limit it to the transaction itself, once you start getting into the post-purchase offense, then you're blurring the claims and there's no rationale at all for this court to reach it. Judge Posner, you asked what's the advantage to the judiciary in this? There isn't really any. This is just a litigant's attempt to get two bites at the apple. Let me try the claim now in this court. Let me try it again. But, there might be a rationale for doing so. Again, if you limit the claim to the purchase transaction itself, it's a pure question of law. It's actually also an easy no-brainer because it wasn't an assignment and the text of the clause forecloses advance royalty claim. And then we're sort of done with, we're basically done with that issue and we move on and the case becomes what your Honor's already identified it really is about, the best efforts case. But there's no advantage to the judiciary in entertaining this de facto assignment or similar version of the advance royalty argument that really is an attempt to argue the part of the case that's still pending before this court. With that, I will turn it over to Ms. Paul. Thank you, Mr. Cardozo. Mr. Paul? Oh, Ms. Paul, sorry. May it please the Court, Courtney Polk on behalf of Joseph Lewis. I'd like to address the 54B issue as it relates to Mr. Lewis. As a practical effect, Mr. Lewis was not involved in J&J or Stiefel after the transaction occurred. So as a practical effect to Mr. Lewis, he would essentially be out of the case after... I worry about words like in practical effect and essentially. Is he out of the case or is he not out of the case? I believe he would be out of the case, Judge. See, if he's completely out of the case, one could then say this appeal, at least with respect to Lewis, is sum all claims with respect to one party, and that's a separate allowance. But if he's only practically out of the case, that doesn't work. The claims against Mr. Lewis, there are no claims that relate to Mr. Lewis after the transaction occurred. There are... There is a claim that I disagree with, but which FC has argued for prior to the transaction. So when I outlined in my jurisdictional statement, there are essentially issues that occurred before the transaction, issues... I just want to be concrete. Is there or is there not a separate claim against Lewis still pending in the district court? I do not believe there is, Judge. If this appeal is upheld, the claims against Mr. Lewis are to go and capture essentially all of the money that was paid under the MEPA to Mr. Lewis, to Mr. DiNardo, and Mr. Stern, not just the money that was paid to Mr. Lewis, and bring that back in... I was unclear pursuing Judge Easterbrook's question. You said you believe there is no claim against Lewis pending in the district court. Has it been dismissed? The damages that are being sought against Mr. Lewis relate purely to the monies that were paid as a result of this transaction. So if this court decides that there was not an assignment and that there were... then there are no more claims against Mr. Lewis because that's the crux of the claim against Mr. Lewis. No, you can't say there are no claims pending in the district court depending on what we do. There are either claims pending against him in the district court right now, at this instant, or there aren't. There are no claims pending against Mr. Lewis in the district court. If this court upholds... But he's a defendant in the district court, right? He is a defendant, but there are no claims against him. I don't understand. Why hasn't he been dismissed? We did not move to dismiss because the 54B certification happened, and if this court upholds it, we certainly will move to dismiss Mr. Lewis as a defendant. So there is, in fact, a claim pending in the district court against him. But it would be this claim. I mean, there's no... He's still a party to the suit, but there's no claim pending against him. So there's no surviving tort claims against him. This is the only contract claim. This is the only contract claim, and even Mr. Lewis was in a party to the license agreement, and to have a breach of contract claim against him under the license agreement... But he's the principal villain, isn't he? According to the... According to FC, absolutely he is the principal villain. But after the fact, to go to your point, Judge, the best efforts claim that relates after the fact, did J&J continue to use best efforts after the fact? Mr. Lewis was no longer involved in J&J after the fact. So the claims that relate... I thought he was J&J. He was not J&J. He had a 45% ownership interest in J&J. Mr. Stern had a 10% interest. Mr. Denario... Yes, but 45% interest when someone doesn't have a 55% interest is ordinarily... If not control, it's very close. Mr. Denario also had 45% interest. So they were equal partners. He's the only active member. The others are passive members. I would disagree with that. Those are the claims that were asserted. They haven't been sued. He's the only one that's been sued. And query law. And there's no fiduciary breach or other to survive in the district court. Not that as I read the judge's opinion on this issue, the claims that were against Mr. Lewis related to the money that was paid under the MEPA. Purely and simply paid under the MEPA and if it wasn't an assignment and if it wasn't an advanced royalty, then there's no more claim against Mr. Lewis. So for those reasons, the practical effect and I understand the court's concern about that, is that Mr. Lewis doesn't have to continue to defend this case for the next two years to then be right back here arguing that this wasn't an assignment and it wasn't an advanced royalty and therefore he doesn't have to concern himself with worrying whether or not the court's going to rule on those particular issues, that somehow downstream, he's going to have to give up money that he got back in 2012. And so and in looking at the distinction between the corporate form, it is presumed that J&J is separate and distinct from Mr. Lewis. Mr. Lewis wasn't a party to the license agreement. To hold him responsible for any payments that were made to him individually and certainly to Mr. DiNardo or Mr. Stern are simply irrelevant and there can be no claim for breach of contract against Mr. Lewis because he wasn't a party to the contract. In addressing the wrongful prevention doctrine, I would like to point out that in the cases that have been cited by FC, those cases all involve instances where one of the parties to the contract wrongfully prevented a condition precedent or something of that nature from occurring. In this instance, Mr. Lewis was not a party, therefore could not have, under the cases cited by FC, wrongfully prevented anything from occurring. So for those reasons, we would ask that the court uphold the Rule 54B certification and uphold the decision of the district court. Thank you. Okay, thank you very much, Mr. Paul. Mr. Wechsler, I'll give you another minute. Thank you, Your Honors. I'd like to just make two quick points. The first relates to whether or not there are separate claims seeking separate damages in the district court. There absolutely are. There are claims for specific acts that were taken after the transaction. They bear no resemblance to the damages that are sought in the earlier claims. They're completely separate. The second point relates to the definition of royalties. The definition of royalties that was read by Mr. Cordozo left off a very critical point to the definition of advanced royalties. The term advanced royalties, and I'll just read directly from the language, says it shall mean quote, any monies based on and to be credited against sub-licensees' future obligations to pay royalties on the actual sale of products paid by sub-licensee to licensee prior to any actual sale of products by sub-licensee. So it can't possibly be based on actual sales because those sales are to take place in the future. We submitted facts that not as part of a separate transaction, not later in time, but as part of the transaction, the assignment agreement that Stiefel intended to... I thought his argument was that these advanced royalties were to be paid to the licensee, namely J&J, rather than to FC. Can you say that again, please? I thought what he was emphasizing was that these advanced royalties were to be paid to J&J, the licensee, rather than to FC. So what the documents that we submitted show is that prior to the transaction the license that was going to be paid to J&J, the licensee, was five percent of net sales. After the transaction, that same document says it was 1.67 percent. That is, the royalties paid in the future on the actual sale of products were reduced by two-thirds. That's the very definition of an advanced royalty. Money was collected and then credited against a future obligation. But as you say, his point was it was J&J that didn't receive the advanced royalties that it should have. Isn't that what you read said? The sub-licensee or the royalty advances go to J&J, go to the licensees. Isn't J&J the licensee? In future sales, yes. The definition doesn't say that the monies are to be paid to J&J that constitute the advanced royalty, only that the future payment has to be credited against future royalties that were going to be paid to J&J. If you look at those documents we attached, it plainly shows that those royalties were reduced, not as part of a separate transaction, but as part of this transaction. Okay, well, we'll have to stop there. Thank you, Your Honor. Thank you to all three lawyers who argued. Our next case for argument